UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

CIVIL ACTION NO. 5:12CV-164-JHM

FALCONITE PROPERTIES, INC., et al.                                              PLAINTIFFS

VS.

PADUCAH-McCRACKEN COUNTY                                                        DEFENDANT
JOINT SEWER AGENCY

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Paducah-McCracken County Joint Sewer Agency's ("JSA") Motion for Summary Judgment [DN 49]. Fully briefed, this matter is ripe for review.

### I. BACKGROUND

Falconite Properties, Inc., Falconite Development, Inc., F&F Leasing, Inc., Strawberry Hill, LLC, Cardinal Point Properties, LLC, Olivet Construction, LLC, Falconite-Hipp, LLC, and Falconite-Hipp Enterprises, LLC ("Plaintiffs") are private developers that built sewer lines in their respective developments and subsequently dedicated those sewer lines to Defendant JSA. In exchange for dedicating the sewer lines, JSA, the operator of the public sewer system in Paducah and McCracken County, agreed to assume all future maintenance for those lines. Plaintiffs contend that Defendant required them to dedicate the sewer lines and pay tap-on fees, which constitute an unlawful taking of property without compensation in violation of Sections 13 and 242 of the Kentucky Constitution and the Fifth and Fourteenth Amendment of the United States Constitution. Plaintiffs also make claims for unjust enrichment based on JSA receiving

the sewer lines at no cost and for compensation under KRS 96.539. Plaintiffs filed their complaint on October 9, 2012 in McCracken Circuit Court.

Plaintiffs identify eight specific developments in which sewer facility additions and extensions were constructed. Those eight developments, the developers of those properties, and the dates for the construction and completion of those developments are as follows:

1. West Park Village, Falconite Development, Inc., 1996-1998;
2. Main Street, Falconite Development, Inc., 1998-1999;
3. Dogwood Plaza/Lift Station at Bluegrass Commons, Cardinal Point Properties, 2006-2008;
4. Olivet Village, Falconite-Hipp, LLC, 2006-2013;
5. Plantation Village, Falconite-Hipp, LLC, 2004-2005;
6. Jordan's Crossing, Falconite Properties, Inc., 2006-2007;
7. Strawberry Hill, Strawberry Hill, LLC, 1996-Present; and
8. Bluegrass Commons, Cardinal Point Properties, 2011-2012.

[Def.'s Mem., DN 49-1, at 3]. For those developments completed after 2006, JSA and Plaintiffs executed an "Agreement and Waiver" ("Agreement") regarding the dedication and future maintenance of the sewer lines for those properties. As relevant to this action, all of the agreements contained the following sections:

> 3. Within one year of completion of the construction and installation of the sanitary sewer facilities and necessary appurtenances thereto, and in consideration of one dollar and the further consideration of the Paducah McCracken Joint Sewer Agency assuming all responsibility for the future maintenance, operation, and repair of the facilities located within the public utility easement, the developer shall fully relinquish, grant, sell, and convey to the Paducah McCracken Joint Sewer Agency all right, title, and interest in the aforesaid improvements to the Paducah McCracken Joint Sewer Agency.
>
> 4. The parties specifically agree that the consideration as stated herein shall be the sole consideration exchanged for the conveyance and transfer of the aforesaid improvements to the Paducah McCracken Joint Sewer Agency and the developer specifically waives all rights whatsoever, if any, accorded to him/her/it under the laws of the Commonwealth of Kentucky or otherwise entitling him/her/it to recoup from the Paducah McCracken Joint Sewer Agency the cost and expense of the construction and installation of the aforesaid improvements within the development.

[Ex. B-1, DN 49-4, at 1]; [Ex. B-2, DN 49-4, at 1]; [Ex. B-3, DN 49-4, at 1]; [Ex. B-4, DN 49-4, at 1]; [Ex. B-5, DN 49-4, at 1]. Plaintiffs and Defendant executed Agreements for Dogwood Plaza, Olivet Village, Jordan's Crossing, Strawberry Hill, and Bluegrass Commons. [Hodges Aff., DN 49-3, at 2].

## II. SUMMARY JUDGMENT

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252. It is against this standard the Court reviews the following facts.

## III. ANALYSIS

Defendant's motion seeks summary judgment on the unlawful takings claim related to the dedication of sewer facilities because all those claims are either barred by the applicable statute limitations or by the waiver section contained in the Agreements signed by Plaintiffs when they dedicated the sewer lines to JSA.[1] Additionally, Defendant contends that all of Plaintiffs' unjust enrichment claims are also either barred by the applicable statute of limitations or by the execution and performance of the Agreements. In response, Plaintiffs argue that the Defendant's motion ignores the other half of their takings claim related to the "exorbitant tap-on fees." Furthermore, Plaintiffs argue that their "exorbitant tap-on fee" allegation creates genuine issues of fact regarding the Defendant's waiver argument. In reply, Defendant contends that Plaintiffs do not have a valid takings claim related to the tap-on charges and that the Agreements are enforceable.

**A. Statute of Limitations Bars Claims as to Developments Completed Prior to October 9, 2007**

Defendant asserts that Plaintiffs' takings claims related to the developments completed prior to October 9, 2007 must be dismissed because of the five-year statute of limitations. Plaintiffs do not contest that the statute of limitations applies to some of their takings claims, but they argue that some of the tap-on fees were paid within the limitations period.

A party asserting a reverse condemnation action under KRS 413.120(1) or the Kentucky Constitution must do so within five years of the action accruing. Jones v. Commonwealth, Transp. Cabinet, Dept. of Highways, 875 S.W.2d 892, 893 (Ky. Ct. App. 1993); Cary v. Pulaski

---

[1] As an initial matter, the Court questions whether it even has subject-matter jurisdiction to adjudicate a takings claim that has yet to be exhausted in state court. Williamson County v. Hamilton Bank, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985); see also Braun v. Ann Arbor Charter Tp., 519 F.3d 564, 569 (6th Cir. 2008) ("[I]n order for a plaintiff to bring a takings claim in federal court, he or she must first pursue available remedies in state court.").

County Fiscal Court, 420 S.W.3d 500, 517 (Ky. App. 2013) (applying the five-year statute of limitations to claims arising from Sections 13 and 242 of the Kentucky Constitution). As for Plaintiffs' Fifth and Fourteenth Amendment claims, "[t]he statute of limitations for federal civil rights claims is the appropriate state statute of limitations." McNamara v. City of Rittman, 473 F.3d 633, 637 (6th Cir. 2007) (quoting Lawson v. Shelby County, 211 F.3d 331, 336 (6th Cir. 2000)) (internal quotation marks omitted). Therefore, the Court will also apply a five-year statute of limitations to Plaintiffs' takings claims under the Fifth and Fourteenth Amendment.

Defendant identifies three out of the eight developments at issue in this case that fall outside the five-year statute of limitations. Those three developments are as follows:

1. West Park Village, Falconite Development, Inc., 1996-1998;
2. Main Street, Falconite Development, Inc., 1998-1999; [and]
3. Plantation Village, Falconite-Hipp, LLC, 2004-2005;

[Def. Mem., DN 49-1, at 9-10]. Plaintiffs do not dispute Defendant's position as to these three developments. Therefore, the takings claims associated with these three properties are dismissed.

### B. Effect of Agreement on Takings Claims

As to the remaining developments, Defendant argues that Plaintiffs expressly waived the right to receive any compensation to recoup the costs and expenses of the construction and installation of the improvements within the developments. Plaintiffs raise two issues concerning the enforcement of the waivers they signed prior to dedicating the sewer lines. First, Plaintiffs maintain that the release of claims contained in the waiver was not supported by valuable consideration. Second, Plaintiffs contend that Defendant breached the agreement between the parties by charging Plaintiffs a tap-on fee.

Under Kentucky law, the term consideration is defined as "[a] benefit to the party promising, or a loss or detriment to the party to whom the promise is made." Phillips v. Phillips,

5

294 Ky. 323, 171 S.W.2d 458, 464 (Ky. 1943). See also Snyder v. Snyder, 193 Ky. 233, 235 S.W. 743, 746 (Ky. 1921) ("A valuable consideration may be some benefit conferred upon the party by whom the promise is made, or upon a third party at his instance or request, or some detriment sustained, at the instance of the party promising, by the party in whose favor the promise is made."); Whitaker Bank, Inc. v. First Nat. Bank and Trust of London, 2008 WL 3165251, *2 (Ky. Ct. App. August 8, 2008) ("Both benefit and detriment need not coexist before there is consideration."); Bankers Bond Co. v. Buckingham, 265 Ky. 712, 97 S.W.2d 596, 601 (Ky. 1936).

Plaintiffs argue that the Agreements did not actually obligate Defendant to do anything, and therefore, the Agreements lacked consideration. The Agreements provided that Plaintiffs "fully relinquish, grant, sell, and convey to [JSA] all right, title, and interest . . . " in the sewer lines. [Ex. B-1, DN 49-4, at 1]. Correspondingly, JSA agreed in the Agreements that it would "assum[e] all responsibility for the future maintenance, operation, and repair of the facilities located within the public utility easement . . ." dedicated to it by the developer. Id. As Plaintiffs acknowledge in their memorandum, this exchange of a benefit for the promisor (Plaintiffs) and a burden for the promisee (Defendant) appears to provide valuable consideration to support this contract. However, Plaintiffs contend that the tap-on fees charged by the Defendant makes the promise illusory. Plaintiffs explain that "[b]ecause these tap-on fees are not segregated from the Defendant's general operating funds, these tap-on fees also presumably go to support the 'maintenance, operation, and repair' of facilities . . ." [Pls. Mem., DN 53, at 9]. While Plaintiffs' argument is creative, it is less than persuasive because it asks the Court to examine the adequacy of the consideration. "Of course, such a contract, as with others, must be supported by a consideration, but the adequacy of the consideration cannot be inquired into if there is something

of detriment to one party or benefit to the other, however, slight." Dexter v. Duncan, 205 Ky. 344, 265 S.W. 832 (1924). In fact, one of Plaintiffs' responses to an interrogatory belies its argument to not receiving a benefit when it dedicated the sewer lines to JSA. When specifically asked in an interrogatory whether Plaintiffs had any continuing duty of maintenance for any of the sewer lines, they responded, "Plaintiffs have not retained any obligation to repair or maintain those facilities they were required to dedicate to the Defendant." [Def. Interrog., DN 49-2, at 14-15]. Plaintiffs fail to offer any proof to disprove their own statement concerning maintenance of the sewer lines. Therefore, the Court will not examine further the existence of valuable consideration.

Plaintiffs next contend that Defendant breached the waiver by not assuming "all responsibility" for the future maintenance of the sewer lines. Specifically, Plaintiffs maintain that since the tap-on fees could have been used to pay for maintenance of the sewer lines, Defendant did not actually assume all responsibility. Plaintiffs rely upon Georgetown Mun. Water and Sewer Service v. Bur-Wal, Inc., 242 S.W.3d 661 (Ky. App. 2007) to support their position, but Burl-Wal explains why Plaintiffs have no ability to recover under KRS 96.539, not how Defendant has allegedly breached a contract. However, the Court refers again to Plaintiffs' own statement in which they indicated that they "have not retained any obligation to repair or maintain" the sewer lines. Furthermore, as noted by Defendant, the waivers signed by Plaintiffs did not indicate that normal tap-on fees would be waived as a condition of the agreement. Finally, as noted below, the Court finds that the tap-on fees are a separate and distinct cost for all users of the public sewer system and are not associated with the developers cost of initial construction of sewer lines within the development. Thus, the Court finds no breach of contract based on the tap-on fees.

7

**C. Takings Claims with Respect to Tap-On Fees**

Plaintiffs argue that the tap-on fees charged by JSA establish a takings claim under the U.S. Constitution and Kentucky Constitution. The Court rejects Plaintiffs' claim. As an initial matter, the Court concludes that JSA's tap-on fees cannot constitute a taking due to the fact that the fees go directly for the payment of a government service. Additionally, there is no merit to Plaintiffs' claim that they were charged twice for the same service or that the tap-on fees were excessive.

Generally, fees collected for government services, such as for sewer and water, fail to constitute a taking.

> [T]he principles of takings law that apply to real property do not apply in the same manner to statutes imposing monetary liability. Thus, even though taxes or special municipal assessments indisputably "take" money from individuals or businesses, assessments of that kind are not treated as per se takings under the Fifth Amendment.

Branch ex. Rel. Maine Nat'l Bank v. United States, 69 F.3d 1571, 1576 (Fed. Cir. 1995); Beechwood Devp., LLC v. Olympus Terrace Sewer Dist., C05-0745-MJP, 2005 WL 1950255, *3 (W.D. Wash. Aug. 15, 2005) ("Although property has been taken for public use, (i.e. maintenance of the sewage system), fees collected for this government service generally do not constitute a taking of property."). In fact, a taking does not occur "if it is imposed for the reimbursement of the cost of government services." United States v. Sperry Corp., 493 U.S. 52, 63, 110 S. Ct. 387, 395, 107 L. Ed. 2d 290 (1989). Recently, the Supreme Court reiterated that "[i]t is beyond dispute that [t]axes and user fees . . . are not takings." Koontz v. St. Johns River Water Management Dist., 133 S. Ct. 2586, 2600, 186 L. Ed. 2d 697 (2013) (internal quotation marks and citations omitted). When a similar issue arose in this district, a three-judge panel determined as follows:

> Rates fixed by the municipality for services rendered by a municipally owned utility does not deprive the user of property of his rights under the law, nor is it a taking without due process of law, but is a matter of public policy for the legislature since the property owner receives a special benefit from the construction of the sewer, water lines and plants in the privilege of making use of them.

Davis v. Water-Sewer and Sanitation Comm'n or Comm'rs of Bowling Green, 223 F. Supp. 902, 904 (W.D. Ky. 1963).

Plaintiffs, however, maintain that they are not similarly situated to all other customers that pay tap-on fees because they have already paid significant sums to construct the very facilities that the tap-on fees are meant to develop and support. Simply put, they believe that they are being charged twice for the same thing. Plaintiffs consider the sewer lines they constructed to be a part of the "core" system. Therefore, they argue that with respect to developers that have already developed core facilities and appurtenances, the imposition of addition tap-on fees as a condition of service is an unconstitutional taking.

Defendant points out that tap-on fees are charged to all customers for the privilege of connecting to the public sewer system and serve to reimburse JSA's capital improvement cost for the "core" public sewer collection and treatment system. JSA's Facilities Extensions Policy states that the tap-on fee is the "connection fee charged to recover [JSA's] costs of providing core facilities and appurtenances" which "relate[s] to the costs to provide sewer service to a general area thru JSA core facilities such as major interceptors, collectors, lift stations, force mains, etc." [JSA Policy, DN 55-1, at 3].

The Court rejects Plaintiffs' contention that the sewer lines they constructed within their developments constitute the "core" or "trunk" of the Public sewer system. The two costs which Plaintiffs incurred are separate and distinct from one another. While Plaintiffs insist on the fact that they were required by ordinance to tap on to the system, they were not forced to develop

their property in such a manner that it needed sewer facilities. By choosing to develop their properties, Plaintiffs needed to construct sewer lines within the development to bridge the gap between the buildings and the public sewer trunk. They constructed the lines within the public utility easements and dedicated those lines to JSA in exchange for JSA assuming all future maintenance of those lines. No taking occurred with respect to this first cost. Additionally, it is important to note that Plaintiffs do not argue that the ordinance requiring them to connect their facilities is unconstitutional.

The second cost incurred by Plaintiffs was the tap-on fee, imposed on all users of the public system to cover the costs of the core system. Plaintiffs are similarly situated to every other user of the public sewer system. The fact that the tap-on fees are not segregated into a separate account for maintenance of the core system is not significant. There is no dispute that JSA has spent considerable amounts in constructing and maintaining the core sewer treatment facilities. Therefore, the Court finds that the Plaintiffs were being assessed a user fee that all other customers pay, and therefore, no taking occurred due to payment of this fee.

Plaintiffs also allege that a fee charged by the government can constitute a taking if it is "so clearly excessive as to belie its purported character as a user fee." Sperry Corp., 493 U.S. at 53. In support of Plaintiffs' position, they include documentation of the various tap-on fees they paid to Defendant. The amounts assessed appear to be flat fees paid for residential property and a fee calculation based on seating capacity or type of business for commercial property. [Sewer Permit, DN 53-4]. For example, Defendant charged Plaintiffs a flat rate of $600 for the tap-on of a residential property in 2000. [Sewer Permit, DN 53-4, at 2, 6]. The documentation provided by Plaintiffs does little to enhance their conclusory allegations made in their Complaint

concerning "excessive tap-on fees."[2] The Court finds no reason to state what exact amount constitutes a reasonable tap-on fee as previous courts addressing similar issues have refused to articulate such formulas, including the Sperry Court. Sperry, 493 U.S. at 62 ("We need not state what percentage of the award would be too great a take to qualify as a user fee . . . ."); General Textile Printing and Processing Corp. v. City of Rocky Mount, 908 F. Supp. 1295, 1307 (E.D.N.C. 1995). However, similar to those previous courts, there is no evidence in this case that the Defendant's fees crossed the threshold in to being "so clearly excessive." See Sperry, 493 U.S. at 62; General Textile, 908 F. Supp. at 1307 ("Suffice it to say, the amounts charged by Rocky Mount for its utility services are not so excessive as to constitute a taking."). Moreover, the Court finds little reason to disturb rates determined by JSA's governing board, and approved by local governing bodies as authorized by Chapter 76 of the Kentucky Revised Statutes. General Textile, 908 F. Supp. at 1307 ("Just as the Sperry Court deferred to the judgment of Congress, this court must respect the apparent intention of the North Carolina General Assembly . . . .").

Finally, Plaintiffs reliance on Blumberg v. Pinellas County, 836 F. Supp. 839 (M.D. Fla. 1993) is misplaced as that case involved a city using interest from customers' utility deposits to fund operating costs. The court found that a taking had occurred due to the fact that customers with larger deposits were subsidizing smaller deposits. Blumberg, 836 F. Supp. at 846. There is no disproportionate subsidizing occurring in this case.

Based upon the reasons stated above, the Court finds that the tap-on fees assessed by Defendant do not constitute a taking.

---

[2] There is some question as to whether Plaintiffs' allegation concerning "excessive tap-on fees" would have survived a motion to dismiss for failure to state a claim. See Beechwood, 2005 WL 1950255, *3-4.

### D. Unjust Enrichment

Plaintiffs contend that Defendant was unjustly enriched when Plaintiffs dedicated the sewer lines to it without compensation. In response, Defendant argues that the Agreements signed by Plaintiffs bar any unjust enrichment claim. Additionally, Defendant maintains that the developments completed prior to 2006 fall outside the five-year statute of limitations for an unjust enrichment claim.

Under Kentucky law, unjust enrichment "has no application in a situation where there is an explicit contract which has been performed." Stonestreet Farm, LLC v. Buckram Oak Holdings, N.V., 2010 WL 2696278, at *14 (Ky. Ct. App. July 9, 2010); see Codell Constr. Co. v. Commonwealth, 566 S.W.2d 161, 165 (Ky. Ct. App. 1977) (reaching the same conclusion). Plaintiffs and Defendant entered into agreements concerning the dedication of the sewer lines and the future maintenance of those lines. Plaintiffs do not dispute the existence of these agreements but simply argue that they are unenforceable due to the tap-on fees and lack of consideration. Because the Court previously addressed these issues and determined that these Agreements are enforceable, Plaintiffs' claims for unjust enrichment are dismissed. Similarly, Plaintiffs' claims for unjust enrichment that accrued prior to October 9, 2007 are dismissed because they fall outside of the five-year statute of limitations. KRS 413.120(1) (applying a five-year statute of limitations for implied contracts).

### E. Claims under KRS 96.539

Plaintiffs assert that Defendant must compensate them pursuant to KRS 96.539. The statute states as follows:

> Any water or sewer utility owned by a city shall develop rules to govern extensions of service to unserved customers and areas. These rules may require that the applicant or applicants for new service pay to the utility all or part of the

> cost of extending utility lines. Where such payment is required, however, the cost of any extension greater than one hundred (100) feet per applicant shall be subject to refund by the utility on a prorated basis for each additional customer whose service line is directly connected to the extension line paid for by the initial applicant or applicants. The refund period shall extend at least ten (10) years, and in no case shall the refund amounts exceed the amount paid. Nothing in this section shall be construed to prevent a water or sewer utility from adopting extension or refund policies which are more lenient to customers than are herein specified.

KRS 96.539. The plain reading of the statute indicates that it applies when an "applicant" pays the utility company to extend a line for the applicant and the extension exceeds 100 feet. Id. If this occurs, the applicant can receive a "refund by the utility on a prorated basis for each additional customer whose service line is directly connected to the extension . . . ." Id. The facts of this case do not meet the criteria outlined in KRS 96.539. Clearly, JSA did not construct any sewer lines for the developers as this suit involves the construction work performed by Plaintiffs. More importantly, there is no money to refund Plaintiffs because they did not pay JSA for constructing the lines.

The Kentucky Court of Appeals in Bur-Wal examined a similar situation where developers attempted to recover costs for the installation of sewer lines based on KRS 96.539. The court rejected the developers' argument for compensation finding that "KRS 96.539 only provides for refunds where payment for the extension of lines have been made directly to the utility." Bur-Wal, 242 S.W. at 668. Additionally, the court found it "highly significant" that the contract between the developers and the utility was silent on the ability for the developers to recoup construction costs. Noting this obvious silence, the court concluded that "the developers received approval of their plans, without any expectation of reimbursement at that time, and consequently they did not ask for or negotiate reimbursement at the time the certificate was approved." Id. In the present case, the Agreements between Plaintiffs and Defendant were not

nearly as ambiguous as those found in Burl-Wall as the Plaintiffs specifically waived the ability to recover costs associated with the construction of the sewer lines. Based on the plain reading of KRS 96.539, Plaintiffs may not pursue a claim under this statute.

## IV. CONCLUSION

For the foregoing reasons, Defendant Paducah-McCracken County Joint Sewer Agency's Motion for Summary Judgment [DN 49] is **GRANTED**.


cc: counsel of record